1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

DEENA H.,

Plaintiff,

9

v.

10

COMMISSIONER OF SOCIAL SECURITY,

11

Defendant.

12

CASE NO. C24-5713-BAT

**ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS**

13    Plaintiff seeks review of the denial of her application for Supplemental Security Income

14 and Disability Insurance Benefits. She contends the ALJ erroneously rejected her testimony and

15 the medical opinions and erred in finding she had no severe mental impairments; she seeks

16 remand for an immediate award of benefits and alternatively further administrative proceedings.

17 Dkt. 10. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter

18 for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

19                          **BACKGROUND**

20    Plaintiff is currently 47 years old, has at least a high school education, and has worked as

21 an administrative clerk. Tr. 259, 297, 957. She applied for benefits in October 2018, alleging

22 disability as of October 1, 2015; she later amended her alleged onset date to April 1, 2018. Tr.

23

58, 259. After her applications were denied initially and on reconsideration, the ALJ conducted a

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

hearing and, on March 10, 2021, issued a decision finding plaintiff not disabled.  Tr. 15-34.
Plaintiff sought judicial review, and the parties stipulated to a remand for further administrative
proceedings. Tr. 1015-19. On remand, the ALJ conducted another hearing and, on May 1, 2024,
issued a second decision finding plaintiff not disabled. Tr. 939-58. Plaintiff now seeks judicial
review of the May 2024 decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found plaintiff had not
engaged in substantial gainful activity since the alleged onset date; plaintiff had the following
severe impairments: bilateral hearing loss, fibromyalgia, and migraine headaches; and these
impairments did not meet or equal the requirements of a listed impairment. Tr. 942, 948. The
ALJ found plaintiff had the residual functional capacity to perform light work except she can
occasionally crawl and climb ladders, ropes, and scaffolds and she can have occasional exposure
to vibration, extremely cold temperatures, loud noise, and bright light. Tr. 948. The ALJ found
plaintiff could perform her past relevant work as an administrative clerk and that she was
therefore not disabled. Tr. 957-58.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial
evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.
Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account
of an error that is harmless. *Id.* at 1111. The Court may neither reweigh the evidence nor
substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

1   (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the

2   Court must uphold the Commissioner's interpretation. *Id*.

3       A.      **Plaintiff's testimony**

4           Plaintiff argues the ALJ erroneously rejected her testimony. Dkt. 10 at 2. Where, as here,

5   the ALJ did not find plaintiff was malingering, the ALJ must provide clear and convincing

6   reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An

7   ALJ does this by making specific findings supported by substantial evidence. "General findings

8   are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

9   undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In

10  other words, an ALJ's finding that a claimant's testimony is not credible must be "sufficiently

11  specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony

12  on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."

13  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). A conclusory statement rejecting a

14  claimant's testimony that fails to identify specifically which statements the ALJ found not

15  credible and why is not sufficient to reject a claimant's testimony, even when that statement is

16  followed by a summary of the evidence. *Id*.

17          Plaintiff argues the ALJ erroneously relied on a lack of objective physical findings to

18  discount her testimony about the effects of fibromyalgia. Dkt. 10 at 4. With respect to plaintiff's

19  allegations of pain due to fibromyalgia, the ALJ noted physical examinations documented

20  findings such as soft tissue tenderness and limited range of motion in the hips, knees wrist, and

21  spine due to pain. Tr. 952. But the ALJ found despite plaintiff's reported pain levels, there were

22  also observations of intact strength and sensation, full neck range of motion, and warm and

23  perfused extremities without edema. *Id*.

1    The ALJ's reliance on a lack of objective findings to support plaintiff's allegations of

2    fibromyalgia pain is inconsistent with the nature of fibromyalgia, which is diagnosed based on

3    the patient's reports of pain and other symptoms, with no laboratory tests to confirm the

4    diagnosis. *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017). Moreover, the ALJ

5    acknowledged several physical findings consistent with plaintiff's allegations, namely tenderness

6    and limited range of motion due to pain, while at the same time failing to explain how other

7    physical findings, such as intact strength and no edema, undermined her pain complaints. The

8    ALJ erroneously evaluated the objective findings when assessing plaintiff's complaints of

9    fibromyalgia pain.

10    Plaintiff also argues the ALJ erred in relying on findings that plaintiff was in no acute

11    distress, asserting "no acute distress" is of little relevance for an individual suffering from a

12    chronic condition. Dkt. 10 at 4-5. The ALJ found the alleged severity of plaintiff's pain

13    symptoms and lack of relief from treatment was not well supported by numerous examinations

14    finding that she was in no acute distress. Tr. 952-53. Even though the ALJ cited to treatment

15    records containing the notation "no acute distress" or similar phrases, the ALJ provided no

16    explanation as to what testimony these findings undermined or how findings of no acute distress

17    were inconsistent with plaintiff's reports of chronic pain. This conclusory finding was

18    insufficient to discount plaintiff's testimony.

19    Plaintiff argues the ALJ erred by discounting her testimony because she received only

20    conservative treatment. Dkt. 24 at 5. The ALJ noted plaintiff underwent treatment for

21    fibromyalgia and/or headaches that included aqua therapy, transcutaneous electric nerve

22    stimulation, Botox injections, and medications including migraine medications, Lyrica, and

23    morphine, but concluded that overall plaintiff had been maintained on a routine regimen of

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 4

medications. Tr. 950. The ALJ also noted Alexander Lee, D.O., plaintiff's primary care provider, stated medications prevent plaintiff from being "bed/chair/home bound," reduce her pain, and allow her to exercise, do hobbies, and perform routine activities of daily living, finding that this was inconsistent with plaintiff's testimony that medications do not help. *Id.*

Evidence of minimal or conservative treatment can be a valid consideration when assessing a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But an evaluation of the aggressiveness of a treatment routine must take into account the condition being treated. *Revels*, 874, F.3d at 667. In this case, the ALJ did not identify any treatment recommendations plaintiff failed to pursue, instead identifying numerous different treatments plaintiff attempted in an effort to relieve her symptoms. Such efforts do not align with a finding of pursuing only minimal or conservative treatment. Moreover, the ALJ did not explain how treatments plaintiff underwent were "conservative" when they are typical treatments for fibromyalgia, nor did the ALJ identify what he would consider to be "aggressive" fibromyalgia treatment. *See id.* (ALJ erred in rejecting claimant's testimony based on supposedly conservative treatment, where the treatment included injections and numerous medications). And contrary to the ALJ's characterization of plaintiff's testimony, she did not testify that medications did not help. Rather, plaintiff testified that some medications helped but she was unable to continue taking them because her insurance would not cover them, and other medications gave her partial or temporary relief, including sometimes reducing her pain to a level where she could be out of bed and sit and read a book with her grandson. Tr. 65, 927, 930. The fact plaintiff stopped taking some medications because of insurance coverage issues and continued taking other medications that partially or sometimes helped relieve her symptoms does not establish that she rejected

aggressive treatment. The ALJ erred in discounting plaintiff's testimony based on the nature of her treatment.

Plaintiff argues, and the Court agrees, the ALJ relied on similarly flawed reasons to discount her testimony about her headaches. Dkt. 10 at 6-7. The ALJ relied on the same erroneous findings discussed above regarding the minimal/conservative nature of plaintiff's treatment and improvement with medication to discount plaintiff's testimony about her migraines. Tr. 950. The ALJ also relied on a lack of objective findings to support the degree of limitation plaintiff alleged, discussing the findings of a neurological consult by Jebin Chacko, M.D., in January 2019. Tr. 950-51. But as with fibromyalgia, primary headache disorders are diagnosed after excluding alternative physical or psychiatric causes. SSR 19-4p. Dr. Chacko found plaintiff met the criteria for chronic migraine, noted that she had tried multiple preventatives without success, and recommended that she try Botox or other new medications. Tr. 655. The ALJ did not explain how Dr. Chacko's findings undermined plaintiff's testimony. This was insufficient to discount plaintiff's testimony on the basis of a lack of objective findings.

The ALJ also found plaintiff had only periodic neurology visits to treat her migraines with gaps from one to almost two years, with generally no intervening primary care or emergency room visits for headaches in between. Tr. 952. The ALJ concluded this showed that treatments with periodic adjustments to her medications have manages her migraines and were inconsistent with her allegations. *Id.* But the ALJ again failed to consider the nature of the impairment being treated. *Revels*, 874, F.3d at 667. SSA guidelines state primary headache disorders sometimes warrant emergency department visits, but the purpose of such a visit is to rule out other causes, initiate acute therapy, and provide referrals to an appropriate provider for further care. SSR 19-4p. The ALJ failed to explain how plaintiff's failure to pursue emergency

treatment when she was already under the care of a neurologist undermines her complaints, and failed to identify recommendations for more frequent neurological care that plaintiff failed to pursue.

Plaintiff argues the ALJ erred in relying on her daily activities in discounting her testimony. Dkt. 10 at 8. An ALJ may consider a claimant's daily activities when evaluating her credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). But the ALJ may not penalize a claimant for attempting to live a normal life in the face of her limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Contradictions between a claimant's reported activities and her asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ described plaintiff's reported activities, including the ability to drive, play games, cook, bake, swim, and watch movies, and found that while disability and the ability to engage in these activities are not mutually exclusive, plaintiff's ability to perform these activities and others suggest that her symptoms were not as severe or as limiting as she asserted them to be. Tr. 953. But the ALJ did not explain how any of these activities are transferrable to a work setting or identify any specific contradictions between plaintiff's ability to perform these activities and her testimony. The ALJ also failed to consider the manner in which plaintiff performed these activities, such as plaintiff's testimony in 2021 that she could drive short distances if she had not had a migraine spike but otherwise needed a ride, and her testimony in 2024 that she could no longer drive without "pass[ing] out for the day" after. Tr. 70, 928. Although the ALJ is correct that disability and the ability to engage in the sort of activities he identified are not mutually exclusive, the ALJ did not explain how plaintiff's ability to perform the activities he identified in fact excluded her from being disabled. The ALJ's conclusory

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

1    statement to the contrary was insufficient to support the finding that plaintiff's activities were

2    inconsistent with her claimed limitations.

3        The Court finds the ALJ erred by failing to give clear and convincing reasons, supported

4    by substantial evidence, for discounting plaintiff's testimony.

5        **B.    Medical opinions**

6        Plaintiff argues the ALJ erred in rejecting the opinions of Dr. Lee and Dr. Chacko. Dkt.

7    10 at 10. When considering medical opinions, the ALJ considers the persuasiveness of the

8    medical opinion using five factors (supportability, consistency, relationship with claimant,

9    specialization, and other), but supportability and consistency are the two most important factors.

10   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in her decision

11   how she considered the factors of supportability and consistency. 20 C.F.R. §§ 404.1520c(b),

12   416.920c(b) (2017). The ALJ is not required to explain how she considered the other factors,

13   unless the ALJ finds that two or more medical opinions or prior administrative medical findings

14   about the same issue are both equally well-supported and consistent with the record, but not

15   identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). The new regulations supplant

16   the hierarchy governing the weight an ALJ must give medical opinions and the requirement the

17   ALJ provide specific and legitimate reasons to reject a treating doctor's opinion. *Woods v.*

18   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). An ALJ cannot reject a doctor's opinion as

19   unsupported or inconsistent without providing an explanation supported by substantial evidence.

20   *Id.*

21       *1.    Dr. Lee*

22       In December 2020, Dr. Lee opined plaintiff could perform sedentary work, she has to lie

23   down 1 to 2 hours during the day due to pain, she would miss 4 or more days of work per month,

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 8

and working on a continuous basis would cause her condition to deteriorate. Tr. 769-70. The ALJ

determined this opinion not persuasive, finding it relied heavily on plaintiff's self-report of

symptoms and was inconsistent with findings of no acute distress. Tr. 955. The ALJ further

found inconsistencies that undermined plaintiff's self-reports undermined the persuasiveness of

Dr. Lee's opinion. *Id.* And the ALJ found the opinion was inconsistent with and unsupported by

examination findings by Dr. Lee and others, Dr. Lee's treatment notes that show improvement

with medication, and Dr. Lee's recommendation that plaintiff exercise. Tr. 955-56.

Plaintiff argues the ALJ failed to give valid reasons for finding Dr. Lee's opinion

unpersuasive. Dkt. 10 at 11. The Court agrees. Although the ALJ noted fibromyalgia and

migraines are not always associated with abnormal vital signs, he found the opinion not

persuasive because it relied heavily on plaintiff's self-reports and was unsupported by objective

findings. An ALJ may not substitute his own interpretation of the medical evidence for the

opinion of a medical professional. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

And an ALJ does not provide adequate reasons for rejecting a doctor's opinion by questioning

the credibility of the patient's complaints where the doctor does not discredit those complaints

and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d

1152, 1159 (9th Cir. 2001). Dr. Lee accounted for the lack of objective tests, stating plaintiff's

"conditions are not diagnosed with standard tests (which have been normal)." Tr. 769. And there

is no indication he discredited plaintiff's reports of symptoms or based his opinion on anything

other than his own assessment of plaintiff's limitations. The ALJ's reliance on his own

interpretation of the medical evidence and his own assessment of plaintiff's credibility where Dr.

Lee did not question her reports was erroneous.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 9

The ALJ again relied on the findings plaintiff was in no acute distress at numerous medical appointments. As with the ALJ's assessment of plaintiff's testimony, the ALJ failed to provide an explanation supported by substantial evidence for how findings of no acute distress undermined Dr. Lee's assessment of plaintiff's chronic conditions. In addition, the ALJ failed to explain how Dr. Lee's statement that plaintiff's medication kept her from being "bed/chair/home bound" or recommendation that she engage in exercise, a standard treatment for fibromyalgia, were inconsistent with his opinion that plaintiff was limited to sedentary work, would have to lie down during the workday, and would miss at least four workdays per month. The ALJ failed to provide valid reasons, supported by substantial evidence, for finding Dr. Lee's opinion not persuasive.

### 2.    Dr. Chacko

Dr. Chacko opinion in January 2021 plaintiff would need to lie down during the workday due to daily headaches, she would miss 4 or more days of work per month, and working on a continuous basis would cause her condition to deteriorate. Tr. 772-73. The ALJ found this opinion not persuasive, on the grounds Dr. Chacko appeared to rely heavily on plaintiff's self-reports, the record does not show Dr. Chacko treated plaintiff before 2019 despite his opinion that these limitations had lasted 9 years, and Dr. Chacko did not provide any medical signs to support his opinion. Tr. 956. The ALJ further found inconsistencies that undermined plaintiff's self-reports undermined the persuasiveness of Dr. Chacko's opinion, and Dr. Chacko's opinion was inconsistent with the objective evidence, including his own examination findings. *Id.*

The ALJ's assessment of Dr. Chacko's opinion suffers from the same errors as his assessment of Dr. Lee's. The ALJ again relied on his own interpretation of the medical evidence, including Dr. Chacko's own findings, and his own assessment of plaintiff's credibility where Dr.

Chacko did not question her reports. These reasons are invalid. Similarly, the ALJ relied on reports of plaintiff's improvement with medication, gaps in treatment, and activities of daily living to find the opinion unpersuasive, all of which the Court has discussed above and found to be invalid reasons to discount evidence. The ALJ failed to provide valid reasons, supported by substantial evidence, for finding Dr. Chacko's opinion not persuasive.

### C.    Mental impairments

Plaintiff argues the ALJ erred in finding she had no severe mental impairments at step two. Dkt. 10 at 14. At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The step-two inquiry has been characterized as "a *de minimis* screening device to dispose of groundless claims." *Id.*

When evaluating whether a mental impairment is severe, the ALJ must rate the degree of functional limitation resulting from the impairment in four broad areas: the ability to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c). If the ALJ rates the degree of functional limitation in these areas as "none" or "mild," the ALJ will generally find the impairment is not severe, unless the evidence otherwise indicates there is more than a minimal limitation in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d).

1      The ALJ found plaintiff had the medically determinable mental impairments of bipolar

2  disorder and generalized anxiety disorder. Tr. 944. The ALJ concluded, however, plaintiff's

3  mental impairments caused no difficulty in the ability to understand, remember, or apply

4  information, and mild difficulty in the other three areas and were therefore not severe. *Id.* The

5  ALJ found plaintiff's functional limitations and restricted daily activities resulted primarily from

6  plaintiff's physical impairments, and the medical evidence showed plaintiff had received

7  minimal conservative treatment through medication but did not require inpatient hospitalizations

8  or outpatient therapy to control the symptoms of her mental impairments. *Id.* The ALJ further

9  found the medical opinions regarding plaintiff's mental limitations, which opined that plaintiff

10 had moderate to marked mental limitations, were unpersuasive. *Id.* at 945-48.

11     The ALJ concluded plaintiff's mental impairments were not severe by ignoring, rejecting,

12 or minimizing all the evidence of limitations caused by those impairments. The evidence shows

13 plaintiff has been diagnosed with serious mental impairments, that she has taken numerous

14 medications to treat these conditions, including antipsychotics, antidepressants, and antianxiety

15 medications, and these medications have been changed and adjusted throughout the relevant

16 period. In addition, psychological evaluations resulted in opinions that plaintiff's mental

17 impairments caused her moderate to marked limitations. The ALJ discounted the medical

18 opinions regarding her mental functioning as unpersuasive, for reasons that largely mirror the

19 erroneous reasons he used to discount other medical opinions. And the ALJ relied on his

20 erroneous assessment of plaintiff's credibility. The ALJ noted plaintiff did not require inpatient

21 hospitalization or engage in regular therapy during the relevant period, but there is no

22 requirement that a mental impairment rise to the level of requiring hospitalization or any level of

23 engagement with therapy to be severe. The ALJ seems to have imposed a level of scrutiny far

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 12

1    greater than the *de minimis* screening device step two is intended to be. Plaintiff's claims of

2    having severe mental impairments are not groundless claims that should be dismissed at step

3    two. The ALJ erred by finding that plaintiff had no severe mental impairments.

4           The Commissioner argues any error in the ALJ's assessment of plaintiff' mental

5    impairments is harmless because the ALJ proceeded beyond step two and considered plaintiff's

6    mental impairments throughout the sequential evaluation, and that even if plaintiff's mental

7    impairments are severe, the ALJ need not include any mental limitations in the RFC finding.

8    Dkt. 16 at 19. But the Commissioner has pointed to nothing in the decision to support the

9    assertion the ALJ considered plaintiff's mental impairments despite finding them not severe.

10   And a reviewing court may not make independent findings based on the evidence before the ALJ

11   to conclude that the ALJ's error was harmless. *Brown-Hunter*, 806 F.3d at 492. The Court

12   declines to in the first instance that plaintiff had no mental limitations that needed to be included

13   in the RFC findings. The ALJ's error in finding plaintiff had no severe mental impairments was

14   not harmless.

15          **D.    Remand for further proceedings**

16          Plaintiff argues this case should be remanded for an immediate award of benefits. Dkt. 10

17   at 20. The Court may remand for an award of benefits where (1) the record has been fully

18   developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has

19   failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

20   medical opinion, and (3) if the improperly discredited evidence were credited as true, the ALJ

21   would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995,

22   1020 (9th Cir. 2014). Courts have flexibility in applying this rule and may instead remand for

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 13

further proceedings where the record as a whole "creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The court finds remand for an award of benefits is not appropriate at this point. Although the record has been fully developed and the ALJ failed to provide legally sufficient reasons to reject evidence, it is not clear that even if the improperly rejected evidence were credited as true, the ALJ would be required to find plaintiff disabled. Rather, the court finds that further administrative proceedings would be useful in order to allow the ALJ to properly evaluate the limitations caused by plaintiff's mental impairments as well as to reevaluate the improperly rejected evidence related to plaintiff's migraines and fibromyalgia. Accordingly, the court finds that remand for further administrative proceedings is the proper remedy.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate plaintiff's mental impairments and shall reevaluate the improperly rejected opinion evidence and plaintiff's testimony. The ALJ shall further develop the record, reassess RFC as needed and proceed with the five-step disability evaluation process as the ALJ deems necessary and appropriate to issue a new decision.

DATED this 2nd day of June, 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 14